UNITED STATES of America, Plaintiff–Appellant,

v.

**Mark R. TAYLOR, Defendant–Appellee.**

No. 90–50438.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1991.

Decided May 29, 1991.

---

Patrick O'Toole, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellant.

Kathryn A. Thickstun, San Diego, Cal., for defendant-appellee.

William M. Walker, ACLU Foundation of San Diego Imperial Counties, San Diego, Cal., for amicus curiae.

Before GOODWIN, HUG and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge:

The government appeals the suppression of evidence discovered at a permanent U.S. Border Patrol checkpoint, established to detain motorists briefly for limited immigration-related inquiries. The district court held that a dual-purpose inspection by a U.S. Border Patrol agent, who had previously been cross-designated as an agent of the Drug Enforcement Agency ("DEA") and U.S. Customs, violated the fourth amendment. We reverse.

Mark R. Taylor, the driver of the automobile, and two other passengers who are not parties to this appeal, were indicted on two counts: (1) conspiracy to possess about 880 grams of methamphetamine with the intent to distribute, and (2) possession of this controlled substance with the intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (1988). The evidence leading to the indictment was found after the automobile was stopped by U.S. Border Patrol Agent Abel Aguilar at the permanent San Clemente checkpoint. The checkpoint is located 66 miles north of the Mexican border on Interstate 5, between San Diego and Los Angeles. The vehicle contained Taylor and two passengers.

Agent Aguilar, who was at the primary inspection point, referred the vehicle to the secondary inspection station because he thought the nervous behavior of occupants could mean that they were concealing undocumented aliens or perhaps narcotics. At the secondary inspection station, Border Patrol Agent Stuart Gary, who was also cross-designated as an agent of the DEA and U.S. Customs, approached the driver's side of the vehicle and asked Taylor to stop his engine. After ascertaining that Taylor was a U.S. citizen, Agent Gary asked for permission to inspect the hatchback-trunk area of the vehicle. Taylor complied and opened the trunk. Agent Gary discovered no undocumented aliens; nor did he find any drugs or contraband. At this point, Agent Gary's immigration inspection was completed. This portion of the detention at the secondary station lasted about three to four minutes.

Taylor became increasingly nervous and uneasy. Observing this, Agent Gary decided to use a "detector" dog trained to alert to hidden persons or narcotics. He walked the dog around the outside of the vehicle, and the dog alerted positively. The detention for this portion of the inspection lasted approximately 60 seconds. The parties stipulated that Gary had probable cause to

search the vehicle for narcotics after the trained dog had alerted. About 800 grams of methamphetamine, two handguns, money and drug paraphernalia were discovered in this search.

The sole issue on appeal is whether the brief continuation of this otherwise proper checkpoint detention for purposes of the canine sniff violated the fourth amendment. We hold that it did not.

■ A stop at a permanent U.S. Border Patrol checkpoint constitutes a "seizure" within the meaning of the fourth amendment. *United States v. Martinez–Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976). Such a stop is reasonable per se, so long as the scope of the detention remains confined to a few brief questions, the possible production of a document indicating the detainee's lawful presence in the United States, and a "visual inspection of the vehicle ... limited to what can be seen without a search." *Id.* at 558, 562, 96 S.Ct. at 3083, 3085. The Supreme Court has cautioned, however, that "[t]he principal protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope of the stop." *Id.* at 566–67, 96 S.Ct. at 3087. Thus, beyond limited intrusions, "checkpoint searches are constitutional only if justified by consent or probable cause to search." *Id.* at 567, 96 S.Ct. at 3087.

The parties do not dispute the propriety of the initial stop nor that referral to the secondary station was justified by the nervous behavior of the vehicle occupants. The heart of their disagreement lies in the legality of the actions that took place after the trunk of the car had been searched and the immigration purposes of the stop had been served. Because of the intrusiveness inherent in extending the detention beyond the time required for immigration purposes, the government must present some justification for the brief additional delay. *See id.* at 557–58, 567, 96 S.Ct. at 3082–83, 3087.

Although Taylor had consented to the visual inspection of the interior of the luggage compartment, the record does not indicate any consent for the continued deten-

tion. Prior to the dog sniff, Agent Gary did not have probable cause to search. Thus, neither consent nor probable cause justified the continued detention. The government contends that a lesser justification than probable cause validates the brief continued detention for the dog to walk around the car.

To delineate the safeguards the fourth amendment affords those stopped at a permanent U.S. Border Patrol checkpoint, public interests must be balanced against the interests of the individual. *See id.* at 555, 96 S.Ct. at 3081. Thus, to determine the standard that must be satisfied in order to justify the continued detention at issue, we "weigh[ ] ... the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979).

We need not recount the grave public concern with the flow of illicit narcotics into this country. Moreover, both common sense and the evidence proffered by the government support the conclusion that a very limited delay while a dog walks around a lawfully stopped automobile would be useful in combatting Mexican border drug traffic.

■ We recognize that individual interests outrank government convenience in the fourth amendment balancing. In this case, however, the intrusion on individual interests was minimal. *See Martinez–Fuerte*, 428 U.S. at 557–58, 96 S.Ct. at 3082–83 (a routine checkpoint stop "intrude[s] to a limited extent on motorists' right to 'free passage without interruption' and arguably on their right to personal security") (citation omitted). The delay was brief—only a minute. It added an insignificant period of time to an otherwise indisputably lawful detention. Any personal intrusion attributed to the dog sniff was similarly minimal. *See United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (holding that a canine sniff of luggage seized by narcotics detectives at an airport is not a "search"

within the meaning of the fourth amendment, principally because the personal intrusion posed by such an action is minimal). Such a "limited intrusion immediately detected the presence of contraband and would have revealed nothing about the container's contents had these been non-contraband." *United States v. White,* 766 F.2d 1328, 1331 n. 3 (9th Cir.1985).

 In striking a proper balance under the fourth amendment between the public and private interests, we hold that the brief further detention conducted by the government in this case must be predicated on an articulable suspicion or "a minimal showing of suspicion," *United States v. Couch,* 688 F.2d 599, 604 (9th Cir.), *cert. denied,* 459 U.S. 857, 103 S.Ct. 128, 74 L.Ed.2d 110 (1982), of criminal activity. *Cf. United States v. Des Jardins,* 747 F.2d 499, 505–06 (9th Cir.1984) (upholding a pat-down search of a person at the border based only on a minimal showing of suspicion).

In holding that the further detention in this case was unconstitutional, the district court relied on *United States v. Hernandez–Alvarado,* 891 F.2d 1414 (9th Cir.1989). In that case, we held that U.S. Border Patrol agents lacked reasonable suspicion for an investigatory automobile stop. *Id.* at 1418–19. *Hernandez–Alvarado* is distinguishable, however, because it involved a roving stop-and-detention. *Id.* at 1415–16. Such a practice is intrinsically more intrusive than a checkpoint dog sniff after the vehicle has been lawfully stopped. *See Delaware v. Prouse,* 440 U.S. 648, 656, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660 (1979); *United States v. Ortiz,* 422 U.S. 891, 894–95, 95 S.Ct. 2585, 2587–88, 45 L.Ed.2d 623 (1975).

■ Although Agent Gary's suspicion would not have sufficed to make a "roving" stop, *see Hernandez–Alvarado,* 891 F.2d at 1419 (stating that "defendant's alleged nervousness is insufficient to create reasonable suspicion"), his observation that Taylor became increasingly nervous and uneasy at the end of the initial check for aliens constituted minimal, articulable suspicion and therefore justified the brief further delay. The dog sniff itself did not exceed the boundaries of reasonableness. *See, e.g., United States v. Morales–Zamora,* 914 F.2d 200, 205 (10th Cir.1990) (finding nothing unreasonable in canine sniffs made of the exterior of vehicles in a public area where the passengers are not inconvenienced).

The suppression order is VACATED and the cause is REMANDED for trial.