947 F.2d 951
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert BRESSETTE, aka Beaux Jangles, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joelene Irene BETONIO, Defendant-Appellant.
 No. 90-50621.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 10, 1991.
Decided Oct. 24, 1991.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Bressette and Joelene Betonio appeal their convictions for possession of, and conspiracy to possess, methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). They argue that they were the victims of an illegal search, that their motions for acquittal should have been granted, that certain evidence should not have been admitted and that their trials should have been severed. We affirm.
 
 
 3
 * On December 6, 1989, at approximately 9:00 p.m., Kenneth Bowers' 1973 Chevrolet Impala approached the permanent immigration checkpoint at Temecula, California, which is approximately seventy-five miles from the U.S. border. Bowers was driving the car. The front seat passenger was appellant Robert Bressette. In the back seat were Melody Davis and appellant Joelene Betonio.
 
 
 4
 Border Patrol Agent Karabanoff noticed that the vehicle was riding low in the rear. When he asked the citizenship of the occupants, the women in the back seat responded that they were U.S. citizens, but the men in the front seat did not respond immediately. Because the car appeared to be riding low and the men did not respond to the questioning, and because Karabanoff thought the occupants appeared nervous, Karabanoff sent the car to the secondary inspection area.
 
 
 5
 At the secondary inspection area, Border Patrol Agent Tangas noticed that the car was riding low and appeared "heavily laden." Tangas asked the occupants of the car to declare their citizenship, to which all answered that they were U.S. citizens. Tangas though the occupants appeared nervous, particularly because the driver, Bowers, was the only one of the four who looked at Tangas. Tangas then asked Bowers if he would mind opening the trunk. Bowers agreed and opened the trunk. Tangas saw no aliens but noticed that everything in the trunk was pushed to the left side.[1] Tangas asked Bowers for identification and noticed that Bowers' hand shook when he handed his driver's license to Tangas.
 
 
 6
 Because the four occupants appeared nervous, Tangas asked Bowers for permission to look inside the passenger compartment. Bowers replied, "Sure. Go Ahead." Tangas asked the other three occupants to step out of the car, which they did. On the rear seat, Tangas found a box that looked like a Christmas present. He asked the occupants to whom the box belonged, but no one answered. Tangas then asked Bowers if he could look inside the box; Bowers said, "Go for it." In the box, Tangas found a package of marijuana.
 
 
 7
 Tangas then directed the four to a trailer, where they were subjected to a strip search. In appellant Betonio's pocket was a glass pipe with brown residue on it and a wooden pipe with marijuana residue. Agent Karabanoff searched the trunk of the car, where he found an empty shoulder holster, a clip and three boxes of ammunition. He also found two plastic bags with a combined total of 258.7 grams of methamphetamine that was seventy-three percent pure.
 
 
 8
 Bressette, Betonio and Bowers were each charged with possession of, and conspiracy to possess, methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). All three defendants were convicted of both counts. Bressette was sentenced to 135 months in prison; Betonio was sentenced to sixty months in prison. Both appeal their convictions.[2]
 
 II
 
 9
 Both appellants appeal the admission of evidence obtained as a result of the search of the automobile, which they contend to have been unconstitutional. The government argues that the searches of the car and of the box found on the rear seat were constitutional because they were based on Bowers' consent.[3]
 
 
 10
 Stopping automobiles at immigration checkpoints and referring them to a secondary inspection station is reasonable per se, so long as the scope of the detention is limited to brief questions, and possibly the production of documents, related to the right of the occupants to be in the United States, and a visual inspection of the vehicle limited to what may be seen without a search. United States v. Martinez-Fuerte, 428 U.S. 543, 558, 562 (1976); see also United States v. Taylor, 934 F.2d 218 (9th Cir.1991). Beyond these limited intrusions, "checkpoint searches are constitutional only if justified by consent or probable cause to search." Martinez-Fuerte, 428 U.S. at 567.
 
 
 11
 Appellants contend that the search of the passenger compartment was beyond the scope of the immigration inspection and was therefore unconstitutional because Agent Tangas lacked probable cause. Probable cause was not necessary, however, if there was a valid consent to the search.
 
 
 12
 Appellants do not argue that their consent was required before the passenger compartment could be searched.[4] Instead, they argue that Bowers' consent was not valid. Their first argument is that Bowers' consent was not valid because it was given during an illegal detention. It is unclear what detention appellants consider to have tainted Bowers' consent to search the passenger compartment.[5] If the search of the trunk was constitutional, there was no illegal detention for the duration of that search and Bowers could not have been illegally detained when he consented to the search of the passenger compartment.
 
 
 13
 The search of the trunk was constitutional. Bowers consented and assisted Agent Tangas by opening the trunk. See Florida v. Bostick, 111 S.Ct. 2382, 2386-88 (1991). Even if there had been no valid consent, a minimally intrusive extension of the immigration investigation is legitimate if it is "predicated on an articulable suspicion or a minimal showing of suspicion." Taylor, 934 F.2d at 221 (quotation omitted) (nervousness at end of immigration check created sufficient suspicion to justify dog sniff). Here, Agent Tangas noticed that the car was riding low and that the occupants appeared nervous. Because the search of the trunk was constitutional, Bowers was not illegally detained when he consented to the search of the passenger compartment.
 
 
 14
 Appellants also argue that Bowers' consent was involuntary because it constituted mere acquiescence to the presence of authority. Whether consent is voluntary is a question of fact, and we will not overturn a trial court's finding that consent to search was voluntary unless it is clearly erroneous. United States v. Castillo, 884 F.2d 1379, 1387 (9th Cir.1988). Appellants may not argue that the presence of methamphetamine in the car proves their consent was not voluntary:
 
 
 15
 We do reject, however, [the] argument that ... no reasonable person would freely consent to a search of luggage that he or she knows contains drugs. This argument cannot prevail because the "reasonable person" test presupposes an innocent person.
 
 
 16
 Bostick, 111 S.Ct. at 2388.
 
 
 17
 We have identified several factors to be considered in determining whether consent is voluntary. These factors include: (1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was told he had a right not to consent; and (5) whether the defendant was told a search warrant could be obtained if he did not consent. Castillo, 844 F.2d at 1387-88. None of these factors is dispositive. Id.
 
 
 18
 In United States v. Alfonso, 759 F.2d 728, 741 (9th Cir.1985), we affirmed a finding that consent was voluntary even though the suspect did not receive Miranda warnings and was in custody when he consented to the search. In the present case, Bowers had been stopped and was not given Miranda warnings or told that he could refuse to consent to the search. However, there was no show of force or threat to obtain a search warrant if Bowers refused. Additionally, Bowers' response to Agent Tangas' request to search the passenger compartment--"Sure. Go ahead."--does not suggest that he felt compelled to consent. For these reasons, we conclude that the district court's finding of voluntary consent was not clearly erroneous.[6]
 
 III
 
 19
 Appellants both appeal the district court's denial of their motions for acquittal of the conspiracy charges,[7] made pursuant to Fed.R.Crim.P. 29. In reviewing denial of such a motion, we use the same test applied to challenges to the sufficiency of the evidence. See United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989). We therefore must determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990).
 
 
 20
 Appellants each moved for acquittal on the ground that the government had not proven that he or she was connected to the conspiracy. To prove a conspiracy, the government must show: (1) an agreement (2) to engage in criminal activity and (3) one or more overt acts in furtherance of the conspiracy. United States v. Ayers, 924 F.2d 1468, 1482 (9th Cir.1991). No formal agreement is necessary; a conspiracy may be proved by circumstantial evidence and the agreement may be inferred from the acts of the parties. Id. Only a slight connection between the defendant and the conspiracy is necessary, so long as that connection is established beyond a reasonable doubt. United States v. Candoli, 870 F.2d 496, 511 (9th Cir.1989).
 
 
 21
 Both packages of methamphetamine were wrapped in newspaper from the San Diego area, suggesting that the drugs were obtained in that area. The trip to California was of unusually brief duration--the trip began in Nevada and less than 20 hours later Appellants and their companions were stopped heading back in the direction of Nevada. These facts suggest that one purpose of the trip was to pick up the methamphetamine. The unusual circumstances of the trip also suggest that all occupants of the car were aware that the trip was not a vacation.
 
 
 22
 The quantity and quality of the methamphetamine suggest that the conspirators intended it for distribution. See United States v. Valentin, 569 F.2d 1069, 1070 (9th Cir.1978) (208 grams of cocaine worth $15,000). That the methamphetamine was seventy-three percent pure also supports this inference. See United States v. Mejia, 844 F.2d 209, 213 (5th Cir.1988) (cocaine sixty to ninety-seven percent pure).
 
 
 23
 Betonio's participation in the conspiracy is further supported by the evidence that the travelers stopped at her sister's house in Chula Vista, California, to pick up marijuana, and at her friend's apartment in Escondido, California, to "drop off car parts." One package of methamphetamine was in a car parts box. A jury could reasonably find that Betonio was the group's contact with the source of the methamphetamine. Cf. United States v. Torres-Rodriguez, 930 F.2d 1375, 1387 (9th Cir.1991) (reasonable to infer participation in conspiracy where defendants' activities were coordinated and defendant drove truck he knew to be loaded with drugs).
 
 
 24
 Bressette's participation is supported by the fact that his purse was found to contain scotch tape, "security ties" and rubber bands identical to those around the box in which one of the two bags of methamphetamine was found. This is sufficient to demonstrate Bressette's knowledge of the presence of the drugs. Bressette also told a DEA agent that he knew where the methamphetamine came from, although he refused to say anything more on the subject.
 
 
 25
 Examining the evidence in the light most favorable to the government, we conclude that there was sufficient evidence to support a finding of at least a slight connection between each appellant and the conspiracy.
 
 IV
 
 26
 Appellants both appeal the admission of an ammunition clip, ammunition and a holster that were found in the trunk of the car. We review admission of evidence for abuse of discretion. See United States v. Gilley, 836 F.2d 1206, 1213 (9th Cir.1988).
 
 
 27
 Evidence of weapons is admissible in a trial for possession of a controlled substance with intent to distribute because "[i]t may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use." United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.) (quotation omitted), cert. denied, 488 U.S. 943 (1988). At the trial in the present case, there was testimony that "narcotics traffickers generally arm themselves." The evidence at issue here was relevant to determining whether the defendants intended to distribute the methamphetamine.
 
 
 28
 Contrary to Appellants' contention, this is not a case like United States v. Bland, 908 F.2d 471, 473 (9th Cir.1990), in which we held that the prejudicial effect of the evidence outweighed its probative value. In Bland, the evidence at issue would have suggested that acquitting the defendant might have meant "releasing an exceedingly dangerous child molester and killer into the community." Id. The evidence at issue here suggests nothing more than that the Appellants may have possessed a weapon. The trial court did not abuse its discretion in admitting the evidence.
 
 V
 
 29
 Appellants appeal the district court's denial of their motions for severance. We review denial of a motion for severance for abuse of discretion. United States v. Smith, 893 F.2d 1573, 1581 (9th Cir.1990).
 
 
 30
 Both defendants argue that they were prejudiced by the joint trial because there was a risk that the jury would find them guilty by association with the other defendants. Because some prejudice is inherent in any joinder of defendants, a defendant seeking severance must show clear, manifest or undue prejudice from a joint trial. Id. at 1581. The possibility that some evidence against one defendant "rubbed off" on the other is not sufficient to prove compelling prejudice. Id. Rather, the primary consideration is whether the jury can reasonably be expected to compartmentalize the evidence applicable to each count. United States v. Vaccaro, 816 F.2d 443, 448-49 (9th Cir.), cert. denied, 484 U.S. 914 (1987).
 
 
 31
 In the present case, each defendant admitted to being present in the car, and different evidence tied each one to the methamphetamine and the conspiracy to distribute. There is nothing to suggest that the jury would not be able to compartmentalize the evidence with respect to each defendant. Bressette's motion to sever was also based on the fact that joint trial would deny him access to his codefendants' exculpatory testimony. "When the reason for severance is the need for a codefendant's testimony, defendant must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving party." United States v. Jenkins, 785 F.2d 1387, 1393 (9th Cir.), cert. denied, 479 U.S. 855, 889 (1986). Because Bressette makes no showing, beyond a bare assertion, that the testimony of any of his codefendants would have been exculpatory, this cannot be a basis for reversing the denial of severance. See id. at 1394.
 
 
 32
 Betonio's additional basis for her appeal is that her defense was antagonistic to those of her codefendants. Where such a claim is made, severance is required only when the defenses are mutually exclusive, that is, when acquittal of one defendant necessarily results in conviction of the other defendants. United States v. Adler, 879 F.2d 491, 497 (9th Cir.1988). Defenses are not mutually exclusive simply because all defendants deny involvement. Id.
 
 
 33
 The essence of Betonio's defense is that the other codefendants conspired to possess and distribute the methamphetamine and that Betonio was an innocent bystander. However, each appellant argued that he or she was not involved in any conspiracy. The jury was not required to find that there was any conspiracy at all. Thus acquittal of Betonio would not preclude acquittal of either of the other defendants.
 
 VI
 
 34
 The judgments of the district court are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3. An appeal by Robert Bressette from the sentence imposed by the district court is the subject of a separate opinion
 
 
 [1]
 Agent Karabanoff stated that when he noticed the same thing later, the arrangement of the contents of the trunk suggested to him that something was being hidden
 
 
 [2]
 Bressette also appeals his sentence. We address that appeal in a separate opinion
 
 
 [3]
 The government also argues that neither appellant has standing to object to Bowers' consent. Because we hold that Bowers' consent made the search constitutional, we need not address this question. See United States v. Wanless, 882 F.2d 1459, 1462 (9th Cir.1989) (whether a defendant is entitled to challenge a search is not a jurisdictional question)
 
 
 [4]
 Even if Appellants had a reasonable expectation of privacy in the passenger compartment, Bowers' consent was sufficient to waive the Fourth Amendment rights of all occupants in light of the facts that Bowers owned the car and that none of the occupants, although present, objected to the search. See United States v. Warner, 843 F.2d 401, 403 (9th Cir.1988) (for search based on consent of third party to be valid, third party must have had equal right of access to the premises and suspect, if present at time of search, must not have actively opposed the search); United States v. Canada, 527 F.2d 1374, 1378-79 (9th Cir.1975) (consent valid when defendant's companion, who had equal control over defendant's suitcase, consented to a search, and defendant, who was present at the time, did not object), cert. denied, 429 U.S. 867 (1976)
 
 
 [5]
 Although neither appellant appears to object to the search of the trunk of the car, or to argue that the time during which that search took place amounted to an illegal detention, much of their argument appears to assume that a detention concurrent with the search of the trunk was illegal
 
 
 [6]
 Appellants also argue that the purpose of the search of the passenger compartment was to look for narcotics, and therefore that the search was beyond the scope of those reasonable at immigration checkpoints. However, if Bowers' consent is valid, the purpose of the search is irrelevant. Furthermore, we have held that a brief additional detention at an immigration checkpoint to facilitate a drug-detecting dog sniff did not violate the Fourth Amendment where the agent observed that the defendant became increasingly nervous and uneasy at the end of the initial check for aliens. See Taylor, 934 F.2d at 221. Thus the search of the passenger compartment would not necessarily be unreasonable even if Agent Tangas' only intent was to look for drugs
 
 
 [7]
 Appellants appear not to have appealed the possession convictions