**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Trinidad CHAVEZ–VALENZUE-
LA, Defendant–Appellant.**

**No. 00–50075.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2001

Filed Oct. 15, 2001

---

Michael Ian Garey, Santa Ana, California, for the defendant-appellant.

Jason A. Forge, Assistant United States Attorney, Organized Crime Strike Force Section, Los Angeles, California, for the plaintiff-appellee.

Before: TASHIMA and FISHER, Circuit Judges, and ZILLY, District Judge.*

FISHER, Circuit Judge:

Appellant Jose Trinidad Chavez–Valenzuela was pulled over by a California Highway Patrol ("CHP") officer for a traffic violation while driving east on Interstate 40, detained by the side of the highway and questioned during a seven-minute interval while a dispatcher checked his license and registration. After the officer learned both were valid, he asked Chavez–Valenzuela for permission to search his SUV, which he provided. The officers conducting the search found six packages of methamphetamine in a nylon bag inside his vehicle. Later, Chavez–Valenzuela moved to suppress the evidence, contending that the initial stop, the prolonged detention and the search violated his rights under the Fourth Amendment. When the district court denied his suppression motion, Chavez–Valenzuela entered a conditional guilty plea to one count of violating 21 U.S.C. § 841(a)(1), possession of methamphetamine with intent to distribute. He now appeals his conviction and sentence. Because we agree with some of Chavez–Valenzuela's arguments, we reverse.

I.

On February 24, 1999 at approximately 8:00 a.m., CHP Officer Joseph David observed Chavez–Valenzuela while both were driving eastbound on Interstate 40. David saw Chavez–Valenzuela's vehicle pass a

---

* Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

slower moving vehicle, then approach another vehicle and decelerate. Upon observing Chavez–Valenzuela driving a distance of two car-lengths behind the second vehicle while maintaining a speed of roughly 60 miles per hour for approximately two-tenths of a mile, David pulled him over for following too closely, a violation of California Vehicle Code § 21703.[1] According to David, the DMV regulations call for keeping three seconds behind another vehicle—at 60 miles per hour, a distance of 264 feet or roughly 13 car lengths. Chavez–Valenzuela contends he maintained a distance of 300 yards from the car in front of him.

David stepped out of his patrol car and motioned for Chavez–Valenzuela to approach him. He explained to Chavez–Valenzuela why he had pulled him over and asked to see his driver's license and vehicle registration. David noticed that Chavez–Valenzuela's hand was shaking severely when he handed over the documents. He asked if Chavez–Valenzuela was on any medication or suffered from any medical problems. Chavez–Valenzuela responded "no" to both questions. At 8:04 a.m., David radioed the CHP dispatcher to check Chavez–Valenzuela's license and registration for improprieties, though he had decided at this point he would not write a ticket. While waiting seven minutes for the dispatcher's response, he asked Chavez–Valenzuela a series of questions about his starting point, his destination, whom he was visiting and where he worked. During this conversation, David noticed that Chavez–Valenzuela's entire body was trembling and he avoided making eye contact. At 8:11 a.m. the dispatch-

er informed David that Chavez–Valenzuela's license and registration were valid and that he had no warrants outstanding. David then asked Chavez–Valenzuela if he had any drugs in the car. Although Chavez–Valenzuela said no, David asked to search the vehicle. Chavez–Valenzuela agreed and signed a consent form to that effect.

While David was reviewing the particulars of the consent form with Chavez–Valenzuela, CHP Officer Christopher Blackwell arrived to provide backup. Blackwell testified that Chavez–Valenzuela's entire body was shaking uncontrollably at that point. After Chavez–Valenzuela finished reading the consent form out loud to David and initialed each paragraph, he opened the back of the vehicle at the officer's request. David found a nylon bag inside the vehicle, opened it and discovered six packages, wrapped in black electrical tape, containing what turned out to be a methamphetamine mixture.[2] He and Blackwell then arrested Chavez–Valenzuela.

Chavez–Valenzuela moved to suppress the evidence against him. After an evidentiary hearing, the district court denied the motion, finding that David's testimony about the probable cause to stop Chavez–Valenzuela's car and reasonable suspicion justifying his continued detention was credible. On August 30, 1999, Chavez–Valenzuela subsequently entered a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), preserving his right to appeal the court's ruling on the suppression motion. The court sentenced him to 168 months' imprisonment on Janu-

---

1. "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway." Cal. Veh.Code § 21703.

2. Subsequent analysis revealed that the packages contained 10.5 kilograms of the mixture, of which 4,313 grams were pure methamphetamine.

ary 25, 2000. He filed this appeal January 27, 2000. Chavez–Valenzuela contends the district court erred in its reliance on David's factually inaccurate testimony and that the initial detention was not based on any legitimate reasonable suspicion. He argues that the extended detention exceeded the scope of the traffic stop as his apparent nervousness alone did not justify David's further inquiry. Chavez–Valenzuela urges that, because his consent to the search followed an unwarranted and unjustifiably long detention, his consent was neither voluntary nor valid.

## II.

■ We review the existence of reasonable suspicion under a given set of facts de novo. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). However, we review the factual findings underlying these determinations for clear error. *United States v. Lopez–Soto,* 205 F.3d 1101, 1103 (9th Cir.2000).

### A. Propriety of the Stop

■ The decision to make a traffic stop is reasonable "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In determining whether a stop was proper, we look to the events preceding the stop, then examine "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas,* 517 U.S. at 696, 116 S.Ct. 1657. Chavez–Valenzuela argues that the district court committed clear error in crediting David's account of the facts providing the rationale for his stop.

David estimated that Chavez–Valenzuela was traveling roughly 60 to 65 miles per hour when he passed the first vehicle, and approached the second vehicle at approximately 60 miles per hour. The second vehicle was also traveling at approximately 60 miles per hour. David testified that he observed Chavez–Valenzuela follow the second vehicle for roughly two-tenths of a mile before pulling him over. When asked about the distance between the first and second vehicles, David testified, "I'm going to say they were—they might be maybe a half a mile. I don't really recall. Maybe a half a mile." Moreover, he testified that he initially observed Chavez–Valenzuela's vehicle "probably half a mile, three quarters of a mile" away from a marker designating mile 123, and ultimately pulled him over "more or less" at the 123 milepost marker. Because David could not have seen him make up a half mile on another car over the distance of less than a mile when the second car was traveling roughly 60 miles per hour, Chavez–Valenzuela contends that the officer's entire account of the events leading to the stop lacks credibility.

It is true that, if David's estimates were credited with mathematical precision, his account would not be credible. However, he was clear in his testimony that he was merely offering estimates of the distance between vehicles, distance traveled and speed. We cannot require officers to offer a mathematically precise account of each of the relevant variables.[3] The district court found David credible in his general assertion that he observed the defendant following the vehicle in front of him too closely. Even though the officer may have miscalculated the location at which he first

---

**3.** Indeed, mathematically precise estimates are difficult for motorists and officers alike, as indicated by Chavez–Valenzuela's assertion that David followed him for five to seven minutes but only traveled "a mile and some."

viewed Chavez Valenzuela's car, the distance between the first and second cars or the speed of the second car (or misspoke concerning one or more of these variables), the district court found him credible as to the assertion central to a § 21703 violation: that Chavez–Valenzuela was driving too closely behind the second car. The record does not contain sufficient evidence to render this credibility determination clearly erroneous.

### B. Propriety of the Prolonged Detention

■ Chavez–Valenzuela also contends that David had insufficient grounds to prolong the detention after the license and warrant checks came back negative, to inquire into the presence of drugs in Chavez–Valenzuela's car and to search the vehicle. The constitutionality of an investigative detention is judged under the framework established in *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), requiring that the scope of an investigative detention "must be carefully tailored to its underlying justification ..., and [may] last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). An officer must initially restrict the questions he asks during a stop to those that are reasonably related to the justification for the stop. *United States v. Perez*, 37 F.3d 510, 513 (9th Cir.1994). He may expand their scope only if he notices particularized, objective factors

arousing his suspicion. *Id.* Conversely, an "inchoate and unparticularized suspicion or 'hunch'" cannot withstand scrutiny under the Fourth Amendment. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868). The events leading to the arrest of Chavez–Valenzuela require us to decide whether the suspicious factors cited by David—Chavez–Valenzuela's extreme shaking and his avoidance of eye contact—were sufficient to justify the extended detention and inquiry into other criminal activity.

Checking the validity of Chavez–Valenzuela's license and registration was permissible under the Fourth Amendment. *United States v. Wood*, 106 F.3d 942, 945 (10th Cir.1997). The extended detention and search of his vehicle, after the documents were found to be valid, present a more difficult question.

■ We note first that the stop had not become a consensual encounter even after David returned Chavez–Valenzuela's license and registration to him. An encounter is not consensual if "a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). At this stage of the encounter, Chavez–Valenzuela had been standing by the side of a highway for more than seven minutes and subjected to a number of "fishing expedition" questions about his travel plans and his occupation.[4]

---

4. Questions asked initially during a traffic stop must be reasonably related to the justification for the stop. *Perez*, 37 F.3d at 513. David's inquiries about Chavez–Valenzuela's starting point, destination and general travel plans were probably justifiable. *See United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir.1999) (implying questions about a suspect's travel plans are permissible); *United States v. Hill*, 195 F.3d 258, 268 (6th Cir. 1999) (holding questions about a driver's

"purpose for traveling" were reasonably related to a traffic stop for speeding). However, the question about Chavez–Valenzuela's occupation, unrelated as it was to the legitimate purpose for the stop, may have violated *Terry*. *See Pruitt*, 174 F.3d at 1221 ("[A]dditional 'fishing expedition' questions such as 'What do you do for a living?' ... are simply irrelevant, and constitute a violation of *Terry*."). We do not need to resolve the propriety of these questions definitively, given our con-

Upon returning Chavez–Valenzuela's documents, David then asked him a question implying that he suspected Chavez–Valenzuela of criminal activity. Confronted with this situation, a reasonable motorist—even with license and registration in hand—most likely would not have believed he could disregard the officer's inquiry and end the conversation. We therefore conclude that Chavez–Valenzuela was not voluntarily present even after David returned his document.

David's inquiries while waiting for the dispatcher's report had not elicited any incriminating responses, but Chavez–Valenzuela's trembling did increase during this period and he began to avoid making eye contact with David. After the dispatcher informed David that Chavez–Valenzuela's license and registration were valid and he had no outstanding warrants, David asked Chavez–Valenzuela if Chavez–Valenzuela had any drugs in his vehicle. Although Chavez–Valenzuela said no, David asked to search the vehicle. The only circumstance even arguably giving rise to the reasonable suspicion needed to prolong the detention, ask about drugs and search the vehicle was Chavez–Valenzuela's nervousness. We must therefore determine whether this nervousness alone was sufficiently particularized and objective under the Fourth Amendment to arouse the officer's suspicion. *Perez*, 37 F.3d at 513.

Other circuits that have addressed this issue have been uniform in concluding that nervousness alone does not justify extended detention and questioning about matters not related to the stop. The Tenth Circuit confronted a factually analogous situation in *United States v. Wood*, 106 F.3d 942, 948 (10th Cir.1997). In *Wood*, an officer pulled the defendant over for speeding. Becoming suspicious when Wood exhibited extreme nervousness, the officer ran a license and criminal history check on him. While waiting for the results of these checks, the officer asked several questions unrelated to the stop. He then asked to search Wood's car. When Wood refused to grant consent, the officer called in a canine team and discovered over 100 grams of methamphetamine. The court held that the search was invalid because the officer lacked a particularized, objective basis to expand the scope of his questions. *Id.* at 946. Wood's extreme nervousness was held not to provide such a basis, because most people show signs of nervousness when confronted with law enforcement officers, and the officer had no basis to compare Wood's behavior during the stop with his usual demeanor. *Id.* at 948. Subsequently, the Eighth Circuit specifically adopted the reasoning in *Wood*. See *United States v. Beck*, 140 F.3d 1129, 1139 (8th Cir.1998).

*United States v. Salzano*, 158 F.3d 1107 (10th Cir.1998), is also on point. The police officer in that case pulled over the defendant for a traffic violation. Finding Salzano's purported travel plans suspicious and noticing that his hands were shaking as he handed over the rental papers for his vehicle, the officer asked for consent to search his motor home. When Salzano refused, the officer called for a drug dog team, which subsequently discovered a large amount of marijuana. The court held that the suspect's nervousness did not justify the continued detention and drug search: "Nervousness alone cannot support reasonable suspicion of criminal activity. This is because it is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity." *Id.* at

clusion that Chavez–Valenzuela's Fourth

Amendment rights were otherwise violated.

1113 (internal citations and quotation marks omitted).

Cases from the Eleventh Circuit have arrived at the same conclusion. The court held in *United States v. Tapia*, 912 F.2d 1367 (11th Cir.1990), that shaking hands and the absence of luggage corroborating the defendant's story as to his travel plans did not justify his continued detention. *Id.* at 1371.

The Sixth and Seventh Circuits have held that nervousness is one factor among many that may appropriately be considered. *See, e.g., United States v. Hill*, 195 F.3d 258, 272 (6th Cir.1999); *United States v. Finke*, 85 F.3d 1275, 1280 (7th Cir.1996). No circuit has held that nervousness alone suffices to create reasonable suspicion, however. *See United States v. Mesa*, 62 F.3d 159, 162–63 (6th Cir.1995) ("Although there are a plethora of cases referring to a defendant appearing nervous, nervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself.").

■■■ On balance, we find convincing the reasoning of our sister circuits as to the relevance of nervousness as a factor creating reasonable suspicion. Encounters with police officers are necessarily stressful for law-abiders and criminals alike. We therefore hold today that nervousness during a traffic stop—even the extreme nervousness Chavez–Valenzuela exhibited here—in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity,

and does not justify an officer's continued detention of a suspect after he has satisfied the purpose of the stop.[5] David lacked the requisite reasonable suspicion when he continued to detain Chavez–Valenzuela after completing the traffic stop and asked him if he was carrying drugs, thereby violating Chavez–Valenzuela's Fourth Amendment rights.

Although we have not previously ruled on this precise issue, dictum in *Perez* supports our conclusion. In *Perez*, we observed that nervousness may be a factor giving rise to suspicion, but explained that it is insufficient, in the absence of other suspicious factors, to justify further questioning unrelated to the reason for a traffic stop. *Perez*, 37 F.3d at 514. Other factors in *Perez*, including the fact that the driver was not the vehicle's registered owner, he was heading to a known drug hub and his appearance belied his stated work as a mechanic, in conjunction with the defendant's nervousness, sufficed to create reasonable suspicion. *Id.*

Our conclusion is consistent with other decisions in this circuit that have factored nervousness into their analysis. *United States v. Taylor*, 934 F.2d 218 (9th Cir. 1991), involved a detention at a border patrol checkpoint. Agents at the checkpoint noted the defendant's nervousness and referred him to a secondary inspection station. Inspection of the trunk of Taylor's car revealed no contraband, but because of his continuing nervousness, the agent walked a trained dog around the car, and the dog detected drugs and other illegal contraband. *Id.* at 219–20. *Taylor*

---

**5.** In arriving at this holding, we are fully in accord with another recent decision of this court, *United States v. Murillo*, 255 F.3d 1169 (9th Cir.2001). In *Murillo* we held that nervousness was sufficient to prolong a traffic detention when considered in combination with the suspect's inability to explain his travel plans, elevated heart rate and evidence that the suspect was using a rental car to take a long trip in a short period of time. *Id.* at 1174. *Murillo* did not suggest that nervousness alone established the reasonable suspicion necessary under the Fourth Amendment to broaden the scope of the officer's questioning.

differs from the present case in several material respects. A border stop presents a wholly distinct context for the search. *See id.* at 221 (noting that the nervousness defendant exhibited "would not have sufficed to make a 'roving' stop"). Moreover, Taylor did not object to the initial stop or the secondary inspection based on his nervousness; he challenged only the use of the canine inspection. In holding that the search comported with the Fourth Amendment, the court specifically noted the "very limited delay while a dog walks around a lawfully stopped automobile," and held that "intrusion on individual interests was minimal." *Id.* at 220. In our case, by contrast, the continued detention, questioning about drugs and search of the car were far more intrusive, and cannot be reconciled with the privacy protections guaranteed by the Fourth Amendment.

Similarly, our analysis comports with *United States v. Nikzad,* 739 F.2d 1431 (9th Cir.1984). In *Nikzad,* we held that Drug Enforcement Administration agents were justified in conducting a *Terry* stop of a suspect based on his nervousness and evasive behavior at an airport, but held that his nervousness did not give the agents probable cause to search his luggage. *Id.* at 1433. Nikzad's nervousness, coupled with his attempts at evasion—staring at police but avoiding eye contact, and moving out of view when an officer returned the stare—justified an initial *Terry* detention. *Id.* at 1432, 1433. Here, in contrast, there were no factors other than nervousness giving rise to reasonable suspicion of criminal activity.[6]

### C. Consent

 Chavez–Valenzuela consented to the search of his car, as indicated by his initialing of the paragraphs of the consent form after he read them aloud in Spanish. The district court found that his consent was freely given. Under the Fourth Amendment, however, evidence obtained subsequent to an illegal investigation is tainted by the illegality and thus inadmissible, notwithstanding the suspect's consent, unless subsequent events have purged the taint. *Royer,* 460 U.S. at 507–08, 103 S.Ct. 1319; *Wong Sun v. United States,* 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Morales,* 972 F.2d 1007, 1010 (9th Cir.1992). In determining whether the taint has been sufficiently purged, we ask "whether, granting establishment of the primary illegality, the evidence ... has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Millan,* 36 F.3d 886, 890 (9th Cir.1994) (internal quotation marks omitted). Elements to be considered in answering this question include temporal proximity between illegality and consent and the presence of intervening circumstances. These factors "go primarily to the question whether an illegally arrested or detained defendant's response to police questioning is 'sufficiently an act of free will to purge the primary taint of the unlawful invasion.'" *United States v. George,* 883 F.2d 1407, 1416 (9th Cir.1989)

---

**6.** Failure to make eye contact was one of the suspicious factors held to justify an initial *Terry*-type investigative stop of Nikzad. We have held, however, that avoidance of eye contact is an appropriately considered factor only under special circumstances that make innocent avoidance improbable. *Nicacio v. INS,* 797 F.2d 700, 704 (9th Cir.1986), *overruled in part on other grounds by Hodgers–*

*Durgin v. de la Vina,* 199 F.3d 1037, 1045 (9th Cir.1999) (en banc). Here, because avoidance of eye contact is a common sign of nervousness, and nervousness during a traffic stop is common to both the innocent and the guilty, we hold that such "special circumstances [making] innocent avoidance of eye contact improbable" are not present. *Nicacio,* 797 F.2d at 704.

(quoting *Wong Sun*, 371 U.S. at 486, 83 S.Ct. 407). We also take into account "the purpose and flagrancy of the official misconduct." *Id.*

By the time David asked Chavez–Valenzuela for permission to search, Chavez–Valenzuela had been stopped, held by the side of the Interstate and subjected to probing questions while waiting for the results of the CHP records check. Even though he had decided not to ticket Chavez–Valenzuela, David took advantage of the records-check delay to escalate his questioning from that related to a traffic stop to a more interrogative, fishing variety. None of Chavez–Valenzuela's answers provided grounds for suspicion and, once the dispatch report came back clean, there was nothing to justify further detention or questioning, other than Chavez–Valenzuela's nervousness. As we and other circuits have observed, confrontations with law enforcement officers are likely to make one nervous; the circumstances of this particular encounter—its location along the highway, its duration and the probing questions—surely contributed to the likelihood of nervousness as a natural reaction. Having crossed the line in further detaining Chavez–Valenzuela and questioning him directly about drug possession, David's success in obtaining Chavez–Valenzuela's "consent" to search his car cannot so easily purge the taint of David's Fourth Amendment violation. The consent did not occur in a vacuum; in the totality of the circumstances here, it was the fruit of an unlawful detention and questioning and cannot validate the search.

## Conclusion

The initial traffic stop was reasonable, and did not violate Chavez–Valenzuela's constitutional rights. Chavez–Valenzuela's nervousness, in the absence of other factors, was not sufficient to create reasonable suspicion to prolong the detention, ask about drugs or search his vehicle. The questioning about drugs violated Chavez–Valenzuela's Fourth Amendment rights, and the taint of this violation overrides his subsequent voluntary consent to the search of his vehicle. We therefore reverse the district court's denial of the motion to suppress, vacate the conviction and remand for further proceedings.

REVERSED, VACATED and REMANDED.