**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan Arthur ZARAGOZA,
Defendant–Appellant.**

No. 01–50320.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 2001.

Submission Withdrawn Dec. 3, 2001.

Re-submitted May 13, 2002.

Filed July 8, 2002.

Benjamin L. Coleman, Federal Defenders of San Diego, Inc., San Diego, California, argued the cause for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, San Diego, California, argued the cause for the plaintiff-appellee; Bruce R.

Castetter, Assistant United States Attorney, and Roopal R. Shah, Assistant United States Attorney, San Diego, California, were on the brief.

Before: O'SCANNLAIN, PAEZ, Circuit Judges, and KING,* District Judge.

## OPINION

O'SCANNLAIN, Circuit Judge.

## OPINION

We must decide whether a border detention of an individual becomes an arrest unsupported by probable cause when a customs inspector briefly handcuffs him.

### I

On February 11, 2001, Juan Arthur Zaragoza drove a 1983 Chevrolet pickup truck with a camper into lane 18 at the San Ysidro Port of Entry between Mexico and the United States. Customs Inspector Edric Omgsioco was working on lane 18 at the primary inspection area, and he inquired about Zaragoza's citizenship and purpose for visiting Mexico. Zaragoza replied that he was an American citizen returning to his home in Anaheim, California after visiting the women in Tijuana. He stated that he was not bringing anything into the United States from Mexico and, when asked about the vehicle's registration, replied that he had owned the pickup for four months, but had not registered as its owner.

Inspector Omgsioco noticed that Zaragoza seemed nervous—his hands were shaking, he was avoiding eye contact, he was looking around, and he was fidgety inside his vehicle. Inspector Omgsioco began an inspection of the vehicle and noticed a nonfactory compartment in the ceiling area of the camper shell, which he tapped. It sounded solid, indicating that there was probably something inside. He also noticed that there was a space discrepancy in the camper shell. Believing that there might be something hidden in the roof, Inspector Omgsioco decided to refer the vehicle for a secondary inspection.

He ordered Zaragoza out of the truck and handcuffed his hands behind his back. Inspector Omgsioco testified that he handcuffed Zaragoza for both his own safety and Zaragoza's and because he believed that Zaragoza might pose a flight risk since lane 18 is a "straight shot" to two freeways, which were only 20 feet away. Inspector Omgsioco then walked Zaragoza to the secondary inspection office, a distance of about 35 feet.

The walk took about 20–30 seconds, during which Inspector Omgsioco told Zaragoza that he was not under arrest but was being detained until his vehicle was inspected. Inspector Omgsioco also told him that he had been handcuffed for safety reasons and that he would remove them when they got to the security office. Once there, Inspector Omgsioco conducted a quick frisk of Zaragoza, removed the handcuffs, patted-down Zaragoza for weapons and contraband, and searched and returned Zaragoza's shoes. Zaragoza was told to sit on a bench in the security office and wait until his vehicle was searched; he made no statements during this time, and

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Ha- waii, sitting by designation.

Inspector Omgsioco found no physical evidence on him.

During the vehicle search, Customs Inspector De Leon found 28 packages of marijuana in the roof area of the camper shell, which turned out to be slightly less than 50 kilograms. Inspector De Leon went to the security office, told Zaragoza that he was under arrest for drug smuggling, and moved him to a cell. About two hours after the marijuana was discovered, Zaragoza was properly advised of his *Miranda* rights and chose to make a statement. After making an incriminating remark, he invoked his rights and questioning terminated. It is this statement he seeks to suppress.

A federal grand jury indicted Zaragoza for (1) importation of marijuana in violation of 21 U.S.C. §§ 952 and 960, and (2) possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Zaragoza filed a motion to suppress his post-arrest statement, claiming that it was the "fruit" of a Fourth Amendment violation—namely, an arrest without probable cause when Inspector Omgsioco handcuffed him for the walk to the security office. Alternatively, he contended that even if his detention did not amount to an arrest, the use of handcuffs was nonetheless an unreasonable seizure under the Fourth Amendment.

Rather than arguing that Inspector Omgsioco had probable cause to arrest Zaragoza, the government contended that handcuffing him was part of a routine border search for which probable cause was unnecessary. After an evidentiary hearing, the district court denied Zaragoza's motion to suppress, finding that he was not under arrest and that the use of handcuffs was otherwise reasonable under the Fourth Amendment. Furthermore, the district court found that even if border officers had violated Zaragoza's rights, any

"taint" flowing from the violation had dissipated by the time he made his incriminating remark. Zaragoza entered a conditional guilty plea to the importation charge, and the district court sentenced him to 24 months in custody and three years of supervised release. This timely appeal followed.

## II

■ We believe that our analysis and decision in *United States v. Bravo*, No. 01–50159, also decided today, is dispositive of Zaragoza's claim. In *Bravo*, the defendant was handcuffed during a walk to the security office, where he was then patted-down and left to wait, unhandcuffed, for the results of a vehicle search. The customs officer reassured Bravo, much like Inspector Omgsioco did to Zaragoza, that the handcuffs were only temporary and would be removed once they reached the security office. We also note that Bravo was handcuffed for one to two minutes, while Zaragoza was handcuffed for only 20–30 seconds.

■ [1] We held that Bravo was merely detained, not arrested, and therefore his later confession was not the product of an earlier, illegal arrest. Detention and questioning during routine searches at the border are considered reasonable within the meaning of the Fourth Amendment. *See United States v. Espericueta–Reyes*, 631 F.2d 616, 622 (9th Cir.1980) ("During such a search, some period of detention for these persons is inevitable. Nevertheless, so long as the searches are conducted with reasonable dispatch and the detention involved is reasonably related in duration to the search, the detention is permissible under the Fourth Amendment."); *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 539–40, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) ("[N]ot only is the expectation of privacy less at the border than

in the interior, the Fourth Amendment balance between the interests of the Government and the privacy right of the individual is also struck much more favorably to the Government at the border.") (citations omitted).

■ Based on our decision in *Bravo*, the brevity of actual time Zaragoza spent in handcuffs, and the words of reassurance from Inspector Omgsioco, we hold that Zaragoza was not under arrest or unreasonably detained for Fourth Amendment purposes. Finally, because we hold that Zaragoza was not arrested, we do not reach his claim that his incriminating statement should have been suppressed under the "fruit of the poisonous tree" doctrine.

**AFFIRMED.**

PAEZ, Circuit Judge, concurring.

In *United States v. Bravo*, 295 F.3d 1002 (9th Cir.2002), a case addressing issues similar to those presented here, the court today holds that customs inspectors at the border may handcuff a detainee without any justification whatsoever. I dissented in *Bravo* because, in my view, there was no justification for the handcuffing. I join the majority here, however, because there was a particularized concern for handcuffing Zaragoza as the customs inspector escorted him from the primary to secondary inspection station.

A customs inspector testified that one of the reasons he handcuffed Zaragoza was that, based on the fact that he was looking down the freeway, Zaragoza could have been a potential "port-runner." Zaragoza was looking toward the freeway, avoiding eye contact, and nervous. He was only about 20 feet away from two freeways. Based on Zaragoza's behavior and the ease of escape, it was reasonable for the officers to handcuff Zaragoza for 20–25 seconds to mitigate the risk of flight.

As in *Bravo*, there was no evidence to suggest that there were particularized safety concerns that would have made it reasonable to handcuff Zaragoza, and therefore this cannot be an adequate basis for using handcuffs. Nor would being nervous or avoiding eye contact alone be enough reason to think that there was a particularized risk that Zaragoza might run the port. *See United States v. Chavez–Valenzuela*, 268 F.3d 719, 726 (9th Cir. 2001) (holding that nervousness alone does not establish a reasonable suspicion of criminal activity and therefore cannot justify a continued detention beyond the purposes of a *Terry* stop); *id.* at 727 n. 6 ("We have held ... that avoidance of eye contact is an appropriately considered factor only under special circumstances that make innocent avoidance improbable ... because avoidance of eye contact is a common sign of nervousness[.]").[1] However, the combination of Zaragoza's nervousness and his staring down the road toward the freeway, in addition to the brevity of the handcuffing, provided a reasonable basis for the inspector's belief that Zaragoza might run the port, and thus justified handcuffing Zaragoza as they walked to the secondary inspection station. Because of the particularized concern of flight here, I concur.

1. In *United States v. Taylor*, 934 F.2d 218, 220 (9th Cir.1991), nervousness was sufficient for a continued detention at the border to permit a drug-detection dog to walk around a car. We focused on the "limited delay while a dog walks around a lawfully stopped automobile" and the minimal intrusion on the defendant. *Id.* In contrast, as our cases reflect, see *Bravo* at 1015–16, handcuffing is a highly intrusive measure, even if it lasts for only a short time.