## UNITED STATES OF AMERICA, Plaintiff—Appellee,

v.

## John Devin RINGGOLD, Defendant— Appellant.

### No. 04–10416.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 2005.

Decided April 28, 2005.

Patrick J. Walsh, AUSA, USLV—Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff—Appellee.

Anne R. Traum, Esq., FPDNV—Federal Public Defender's Office, Las Vegas, NV, for Defendant—Appellant.

Before: NOONAN, THOMPSON, and RYMER, Circuit Judges.

## MEMORANDUM *

Defendant–Appellant John Devin Ringgold appeals the district court's denial of his motion to suppress evidence seized as the result of a search of his vehicle during a routine traffic stop. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

"[T]he scope of an investigative detention must be carefully tailored to its underlying justification, and may last no longer than is necessary to effectuate the purpose

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

of the stop." *United States v. Chavez–Valenzuela,* 268 F.3d 719, 724 (9th Cir. 2001). An officer may, however, expand the scope of his inquiry beyond matters reasonably related to the stop "if he notices particularized, objective factors arousing his suspicion." *Id.*

 Under the totality of the circumstances presented in this case, reasonable suspicion existed to justify the additional inquiries made during the course of the traffic stop: the absence of the car's registered owner, the overwhelming smell of the air freshener, the misalignment of the airbag compartment with the car's console, and Ringgold's extreme nervousness. *See, e.g., United States v. Rojas–Millan,* 234 F.3d 464, 468–70 (9th Cir.2000). Ringgold's responses to the initial inquiries, in particular Ringgold's explanation of his travel route and plans, and the officers' discovery that Ringgold had previously been detained as a passenger in a truck in which $660,000 in cash was found in a hidden compartment provided further justification for the officers' additional questioning of Ringgold following the formal completion of the traffic stop. Because reasonable suspicion existed, the validity of the officers' additional inquiries does not depend on the encounter being consensual. *See Chavez–Valenzuela,* 268 F.3d at 724–25.

 Ringgold contends that even if the officers' initial questioning was constitutionally valid, his subsequent consent to a search of the car was not voluntary and therefore invalid. Specifically, Ringgold contends the coercive environment and the threat of a dog sniff undermined the voluntariness of his consent. We disagree.

A search conducted pursuant to a person's consent, voluntarily given in light of the totality of the circumstances, is constitutionally permissible. *Schneckloth v. Bustamante,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). We consider several factors to determine the voluntariness of consent including: whether the defendant was in custody; whether the arresting officers had their guns drawn; whether Miranda warnings were given; whether the defendant was notified that he had a right not to consent; and whether the defendant had been told a search warrant could be obtained. *United States v. Patayan Soriano,* 361 F.3d 494, 502 (9th Cir.2004).

 Applying these factors to the circumstances of this case reveals Ringgold's consent was indeed voluntary. Even if we were to assume that Ringgold was in custody during the period in which he was pressed to give his consent to the search, the remainder of the relevant factors indicate voluntary consent. The arresting officers did not have their guns drawn, nor is there any suggestion that their weapons were prominently displayed. Miranda warnings were not given; however, the encounter was, at most, a Terry stop for which Miranda warnings are not required. *See Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Bautista,* 684 F.2d 1286, 1291 (9th Cir.1982). Ringgold was also fully and repeatedly advised of his right to refuse consent. That Ringgold understood this right is evident from his colloquies with the officers. *See Patayan–Soriano,* 361 F.3d at 504. Although the officers did threaten to conduct a "free dog sniff" of the car with a narcotics dog, the threat of a lawful dog sniff did not render Ringgold's consent involuntary. *See Illinois v. Caballes,* —— U.S. ——, ——, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005); *United States v. Todhunter,* 297 F.3d 886, 891 (9th Cir.2002).

We conclude that the officers had reasonable suspicion to justify broadening the

scope of their questioning, and the search was conducted pursuant to Ringgold's voluntary consent. Accordingly, Ringgold's motion to suppress was properly denied.

AFFIRMED.