MEMORANDUM *
Gregory Monroe appeals from his conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. Although Monroe concedes that he consented to the pat-down search that produced the firearm, he argues that the search was tainted because it followed on the heels of an unreasonably prolonged investigatory detention inside Gina Smith’s apartment. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons explained below, we affirm.
Even if Monroe’s detention in the apartment violated the Fourth Amendment— which we do not decide — there was no “taint” that carried over to the pat-down search that followed. Monroe consented to the pat-down search and does not argue on appeal that his consent was not volun *554 tary. Voluntariness, however, is not itself dispositive of the question whether the fruit of a search is tainted. See United States v. Washington, 490 F.3d 765, 775 (9th Cir.2007) (Washington I). The gun found in Monroe’s pocket is admissible only if his consent was gained through “ ‘means sufficiently distinguishable [from the prior illegality] to be purged of the primary taint.’ ” Id. at 776 (quoting Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). This standard requires us to consider “(1) the temporal proximity of the consent and the illegal seizure; (2) the presence of intervening circumstances; and (3) particularly, the purpose and flagrancy of the official misconduct.” Id. (internal citations and quotation marks omitted). Our review is de novo. United States v. Washington, 387 F.3d 1060, 1071 n. 11 (9th Cir.2004) (Washington II).
Here, the temporal proximity between the allegedly illegal detention and the officers’ request to perform a pat-down search (factor 1) is close. On the other hand, there is no indication in the record that the officers purposely circumvented Monroe’s Fourth Amendment rights or acted in bad faith (factor 3); indeed, it is far from clear that there was any Fourth Amendment violation at all, and we do not decide that there was.[1] Most importantly, the final factor, the presence of intervening circumstances (factor 2), weighs heavily in the government’s favor. When Officer Dera asked Monroe if he would agree to a pat-down search, Monroe had already been told that he was free to go, as had the other adults, who had already left. Under the circumstances, a reasonable person would have believed that he did not have to stay in the apartment or the apartment complex. See Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In fact, Monroe did leave — he stepped out the door of Smith’s apartment and was walking down the stairs outside. Monroe’s investigative detention had ended at the time he left the apartment. A separate encounter began when, on Monroe’s way down the stairs, Dera (who was standing outside) asked Monroe if he would agree to be searched, and Monroe “advised [him] that he had no problem with that.”
The fact that Monroe gave his consent only after he had been told he was free to leave, and only after he had left the apartment and was walking down the stairs outside, is an “intervening circumstance[]” separating the two encounters. Washington I, 490 F.3d at 776; see also United States v. Chavez-Valenzuela, 268 F.3d 719, 727 (9th Cir.2001), as amended, 279 F.3d 1062 (9th Cir.2002). Unlike the petitioner in Chavez-Valenzuela — who consented to a search of his car while standing on the side of a highway with a police officer who persisted in asking him “probing questions” and who never told him that he was free to leave, see 268 F.3d at 728 — -Monroe gave his consent from a position sufficiently separated from, and untainted by, any prior illegality. His consent was therefore “ ‘sufficiently an act of free will to purge the primary taint.’” Washington I, 490 F.3d at 774 (quoting Wong Sun, 371 U.S. at 486, 83 S.Ct. 407).
For the foregoing reasons, we conclude that even if the initial investigatory detention fell outside the scope permitted by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the circumstances of *555 Monroe’s subsequent consent to a pat-down search were sufficiently separate from that detention to purge the taint.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.

. Monroe was never told his release was conditioned on submitting to interrogation. Compare Ganwich v. Knapp, 319 F.3d 1115, 1121 (9th Cir.2003). Nor did the officers hint that they would have been able to search him without his consent if he refused. Compare Washington II, 387 F.3d at 1076.