# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No. 98-1709

---

United States of America,                  *
                                           *
      Plaintiff-Appellee,        *
                                           *
v.                                         *      Appeal from the United
                                           *      District Court for the
                                           *      District of Nebraska.
                                           *
Efrain Garfio-Chavez,                      *
also known as Efrain                       *      [UNPUBLISHED]
Chavez-Garfio, also known                  *
as Shorty,                                 *
                                           *
      Defendant-Appellant.       *

---

Submitted: June 11, 1998
Filed: July 22, 1998

---

Before HANSEN and MURPHY, Circuit Judges, and DOTY,[1] District Judge.

---

DOTY, David S., District Judge

     Efrain Garfio Chavez ("Chavez") entered a conditional plea of guilty to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Chavez conditioned his plea on his right to appeal the district court's

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

denial of his motion to suppress evidence seized during a search of a vehicle he was driving. Chavez contends that there was not reasonable suspicion to justify his detention, and that he did not voluntarily consent to the search of his car. We affirm.

## BACKGROUND

On March 3, 1997, Nebraska State Patrol Trooper Daniel Wilson ("Wilson") was on duty with his canine when he noticed a 1985 maroon Cadillac traveling eastbound on Interstate 80 west of Ogallala, Nebraska. After observing the vehicle weave on and off the shoulder of the interstate four or five times, Wilson activated his overhead emergency lights and stopped the Cadillac. Wilson got out of his patrol car and walked to the driver's side of the Cadillac. He observed that the vehicle was occupied by three individuals. Chavez was driving the vehicle with Barbara Hall ("Hall") in the front passenger's seat and Juan Jose Garcia Nava ("Nava") in the back seat. Upon Wilson's request for Chavez' driver's license and vehicle registration, Chavez presented an Arizona identification card. Chavez did not have an operator's license and could not produce any registration papers. Hall informed Wilson that she was in the process of purchasing the vehicle from a car lot in Minnesota.

Wilson asked Hall and Nava for identification and requested Chavez to accompany him to the patrol car. Wilson radioed a request for criminal history checks on all three individuals. While waiting for results, Wilson conversed with Chavez. Chavez told Wilson that they were on their way to Duluth, Minnesota, from Phoenix, Arizona. Chavez also told Wilson that he worked as a snow plow driver for Hall's brother. Chavez further explained that Hall was his girlfriend of about six months and that Nava was his cousin. The radio dispatch informed Wilson that Chavez did not have an operator's license, that Chavez and Hall had criminal histories involving drugs,

and that the vehicle was registered to an individual in Minnesota. Wilson did not learn of any specific charges against Chavez or Hall, and there were no warrants for the vehicle.

With the information from dispatch, Wilson left the patrol car to speak with Hall. Hall told Wilson that Chavez was her boyfriend of eight to nine months, and that they were going to Duluth, Minnesota. Hall also told Wilson that Chavez was employed as a construction and landscape worker by her brother in Phoenix, Arizona. Hall further stated that Nava was a cousin of Chavez.

Wilson returned to the patrol car. On his way to the vehicle, Wilson called for backup for a possible search of the vehicle. Wilson issued Chavez a warning for driving on the shoulder and a citation for driving without an operator's license. After Chavez signed the warning and citation, Wilson informed Chavez that he was free to leave. As Chavez got out of the patrol car, the wind blew the passenger door open. Wilson asked Chavez if he was okay. After Chavez told him that he was, Wilson asked Chavez if he had a minute to speak with him. While seated in the patrol car, Wilson asked Chavez if he was transporting any contraband, drugs, weapons, or large amounts of cash in the car. When Chavez replied that he was not, Wilson asked Chavez for permission to search the car. Chavez told Wilson that it was okay with him, but that Wilson would have to check with Hall. Wilson approached Hall and, after receiving her assurance that she had no illegal items in the car, asked to search her car. Hall agreed to the search.

All three occupants were asked to stand outside of the vehicle during the search. Assisted by his canine and a law enforcement officer who arrived at the scene, Wilson searched the car and found methamphetamine and amphetamine in the trunk. All three occupants were arrested and the vehicle was towed from the scene.

Chavez filed a motion to suppress the evidence seized pursuant to the search of the vehicle. Following an evidentiary hearing, the magistrate judge issued a report and recommendation to deny the motion. The district court adopted the magistrate judge's recommendations. Chavez now appeals the denial of his motion to suppress evidence.

## DISCUSSION

### A. Consensual Encounter

Chavez does not dispute that Wilson had probable cause to stop him for driving on the shoulder of the interstate. Chavez argues, however, that after obtaining Chavez' identification, inquiring about his journey, and running the computer checks, Wilson had all of the information necessary to appropriately address the violation and the traffic stop should have concluded. Chavez asserts that by requesting permission to search the vehicle, Wilson transformed an otherwise legitimate traffic stop into an "investigative detention" which can only be justified by reasonable suspicion under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The district court concluded that Chavez' consent occurred under circumstances which would not support a finding that the defendant was in detention. It is well established that not all personal contacts with law enforcement officers implicate the Fourth Amendment. See Terry, 392 U.S. at 19-20 n.16; United States v. Beck, 140 F.3d 1129, 1135 (8th Cir. 1998). Consensual encounters do not trigger Fourth Amendment scrutiny unless the encounter loses its consensual nature. Florida v. Bostick, 501 U.S. 429, 434-35, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991). There is no bright line for differentiating a consensual encounter from an investigative detention; rather, the determination involves a fact intensive inquiry which depends upon the circumstances of each case. See Beck, 140 F.3d at 1135; United States v. McKines, 933 F.2d 1412, 1419 (8th Cir.) (en banc), cert. denied, 502 U.S. 985, 112 S. Ct. 593, 116 L. Ed. 2d 617 (1991). In addressing this issue, this court reviews the historical facts for clear error and the ultimate legal conclusions de novo. See Ornelas

v. United States, 517 U.S. 690, 696-97, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); United States v. Hathcock, 103 F.3d 715, 718 (8th Cir.), cert. denied, __ U.S. __, 117 S. Ct. 2528, 138 L. Ed. 2d 1028 (1997). A consensual encounter becomes a seizure requiring reasonable suspicion under the Fourth Amendment "when the questioning is so 'intimidating, threatening or coercive that a reasonable person would not have believed himself free to leave.'" See Hathcock, 103 F.3d at 718 (quoting McKines, 933 F.2d at 1419). "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." See Bostick, 501 U.S. at 434 (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)). Chavez argues that a reasonable person in his position would not have felt free to leave.

After a careful review of the record, we conclude that the record supports the district court's finding that Chavez was no longer seized within the meaning of the Fourth Amendment at the time that Wilson asked Chavez for consent to search the vehicle. After issuing the warning and citation, Wilson told Chavez that he was free to leave. Chavez got out of the patrol car. While seated in the patrol car and without displaying a weapon, Wilson then asked for permission to search the vehicle. There is no evidence of intimidation or coercion. At the time of the request to search, Chavez had everything he needed to be on his way and had been given permission to leave. Under these circumstances, we believe a reasonable person in Chavez' position would have felt free to leave at the time that Wilson asked for permission to search. Thus, Wilson's request to search came during the course of a consensual encounter and was permissible without reasonable suspicion.

**B.     Voluntariness of Consent**

Chavez also argues that neither Chavez nor Hall voluntarily consented to a search of the Cadillac.  Because Wilson's request to search the vehicle did not constitute an unlawful detention within the purview of the Fourth Amendment, the fruits of the search will not be suppressed as long as Chavez and Hall voluntarily consented to the search.  See United States v. White, 81 F.3d 775, 780 (8th Cir.), cert.

denied, __ U.S. __, 117 S. Ct. 518, 136 L. Ed. 2d 406 (1996); United States v. Miller, 20 F.3d 926, 930 (8th Cir.), cert. denied, 513 U.S. 886, 115 S. Ct. 226, 130 L. Ed. 2d 152 (1994). Consent is voluntary "if it was 'the product of an essentially free and unconstrained choice by its maker,'" rather than "'the product of duress or coercion, express or implied.'" United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)).

The determination of voluntariness is a question of fact and depends upon the totality of circumstances in the case, including the characteristics of the accused and the environment in which consent was given. See White, 81 F.3d at 780; Chaidez, 906 F.2d at 381. Factors which guide a court's analysis include the defendant's age; his general intelligence and education; whether he was under the influence of a mind-altering substance; whether he was informed of his right to withhold consent or Miranda rights; whether he was aware of the protections afforded by the legal system; the length of time he was detained and questioned; whether he was threatened, physically intimidated, or punished by the police; whether he relied upon promises or misrepresentations; whether he was in custody or under arrest when consent was given; whether he was in public or a secluded place; and whether he objected to the search or stood by silently as the search took place. See United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993) (citing Chaidez, 906 F.2d at 381 (citations omitted)). The government has the burden of proving voluntariness of consent by a preponderance of the evidence. See United States v. Galvan-Muro, 141 F.3d 904, 907 (8th Cir. 1998); Barahona, 990 F.2d at 417. This court reviews the district court's finding of voluntary consent under a clearly erroneous standard. See White, 81 F.3d at 780.

The district court adopted the magistrate judge's report and recommendation which discussed the numerous factors to be considered by the court and found that the consents of Chavez and Hall were voluntary. The district court's findings of voluntariness of consent are supported by the record. Both Hall and Chavez were

adults and there was no evidence presented that either was intoxicated or under the influence of drugs when their consents were given. Both Chavez and Hall had prior criminal histories involving drugs, indicating a familiarity with the criminal justice system. The encounter lasted less than thirty minutes. There was no evidence of threatening or coercive conduct on the part of Wilson. Neither Hall nor Chavez relied on promises or misrepresentations by Wilson. In addition, neither Hall nor Chavez was under arrest or in custody when the consent was given. Rather, Chavez had been advised that he was free to leave prior to his giving consent. The stop took place on an interstate highway during daylight hours, and neither Hall nor Chavez objected while the search took place. Their actions were consistent with the granting of consent. Under these circumstances, we conclude that the district court did not clearly err in determining that Chavez and Hall voluntarily consented to the search of the vehicle.

## CONCLUSION

For the reasons set forth above, the district court properly denied Chavez' motion to suppress the evidence found in the search of the vehicle. Accordingly, we affirm the conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.