UNITED STATES of America, Plaintiff–Appellee,

v.

Jose Trinidad CHAVEZ–VALENZUE-LA, Defendant–Appellant.

No. 00–50075.

United States Court of Appeals, Ninth Circuit.

Feb. 13, 2002.

Before A. TASHIMA and FISHER, Circuit Judges, and ZILLY, District Judge.*

ORDER REJECTING SUA SPONTE CALL FOR REHEARING EN BANC

O'SCANNLAIN, Circuit Judge, with whom Circuit Judge, KLEINFELD joins, dissenting from the denial of en banc rehearing.

An active judge *sua sponte* called for rehearing en banc. The matter failed to receive a majority of the votes of the non-recused active judges in favor of en banc consideration. Fed. R.App. P. 35(b).

The *sua sponte* call for rehearing en banc is rejected. Judge O'Scannlain's dissent from the rejection for rehearing en banc is attached.

Today our court's Fourth Amendment jurisprudence inflicts unanticipated collateral damage: in the Nine Western States, Detective Columbo is now unconstitutional.[1] In a single paragraph, the opinion in

---

\* Honorable Thomas Zilly, United States District Judge for the Western District of Washington, sitting by designation.

1. Detective Columbo was, of course, the fictional star of various television specials, and of a television series that bore his name. *See generally* All About the Columbo TV Show, *at* http:// www.geocities.com/TvPilotGuy/columbo.html (last visited Jan. 30, 2002). Columbo

was "a Police Lieutenant Detective who seem[ed] rather dimwitted to his criminal adversaries," but was "really crazy like a fox"; his demeanor caused "criminals [to] become ... overconfident that Columbo will never catch them." Columbo's trademark investigative technique, which led to his success, was to tell a suspect "that he's done with his investigation" and "turn[ ] towards the door

this case creates a new brightline "seven-minute rule" for police questioning during a traffic stop. If someone is pulled over for a traffic stop, and is questioned for seven minutes, his will is so overborne that he is *per se* incapable of consenting to answer any further questioning, even if his license and registration are returned to him and he is free to go. Any further questioning—such as, "By the way, do you have any contraband in the car?"—now violates the motorist's Fourth Amendment rights; accordingly, any answer he offers, and any evidence to which such an answer leads, are subject to a "fruit-of-the-poisonous-tree" analysis, and presumably excludable.[2]

This new seven-minute rule is as unsupported by precedent as it is untenable in practice. Given the sheer volume of traffic stops that occur in this circuit, it is sure to wreak havoc on legitimate law enforcement efforts. I dissent from our failure to take this case en banc.

## I

With scant precedential support, the opinion declares that "the stop had not become a consensual encounter" even *after* Officer David returned Chavez–Valenzuela's license and registration to him, rendering him free to leave. *United States v. Chavez–Valenzuela*, 268 F.3d 719, 724 (9th Cir.2001). I have no doubt that such a

conclusion *could* be correct under the right circumstances.[3] But the opinion eschews a detailed factual inquiry in favor of a brightline rule. It reasons that when Officer David returned the license,

> Chavez–Valenzuela had been standing by the side of a highway for some time, including the seven minute period when he was subjected to a number of "fishing expedition" questions about his travel plans and his occupation.... Upon returning Chavez–Valenzuela's documents, David then asked him a question implying that he suspected Chavez–Valenzuela of criminal activity. Confronted with this situation, a reasonable motorist—even with license and registration in hand—most likely would not have believed he could disregard the officer's inquiry and end the conversation.

*Id.* at 724–25 (footnote omitted). Accordingly, says the opinion, "Chavez–Valenzuela was not voluntarily present even after David returned his document." *Id.* at 725.

This analysis is flawed in a subtle but crucial way. The core of the argument is this: Officer David expanded his questioning after returning Chavez–Valenzuela's license to him, and this expanded questioning exceeded the bounds of an investigative stop-and thus, constituted an improper prolonged detention. The flaw is this: a *Terry* stop cannot be impermissibly extended if the stop is *over.* Under

---

to leave," but then "turn[ ] back and say[ ], 'Oh, just one last question.' And you can bet that's the question they were sure he wouldn't be asking. In one moment, they go from being sure they'll get away with their crime to knowing they've been caught." *Id.*

**2.** *See generally Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (setting forth the "fruit-of-the-poisonous-tree" analysis).

**3.** Indeed, the Supreme Court has set forth various circumstances that render an encoun-

ter with law enforcement non-consensual, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled...." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). But where, as here, none of these circumstances exists, "inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 555, 100 S.Ct. 1870.

these facts, once David returned Chavez–Valenzuela's license, he was—both legally and objectively—free to go;[4] any further questioning was a consensual matter. But instead of analyzing the facts, the opinion simply applies its newly-minted seven-minute rule to conclude that, even with license in hand, no reasonable person in Chavez–Valenzuela's position would feel free to leave. In adopting this new seven-minute rule, the opinion ignores what the Supreme Court has made clear is "the touchstone of the Fourth Amendment": "reasonableness." *Robinette*, 519 U.S. at 38, 117 S.Ct. 417.

## II

Indeed, the import of Supreme Court teachings in this area is sufficiently clear that various of our sister circuits, when posed with the problem presented in this case, rendered answers that track my analysis—answers far different from the *per se* response our court offers in this case. For example, in *United States v. White*, 81 F.3d 775, 778–79 (8th Cir.1996), the Eighth Circuit addressed a defendant's claim that an officer had unjustifiably broadened his questioning during a traffic stop to include a query about contraband. White claimed that this broadening exceeded the permissible scope of questioning and, consequently, tainted his later consent to search his vehicle. The Eighth Circuit, however, was unpersuaded. Dismissing the claim, the court noted that after running a check on his license and registration, the officer "returned to White, handed White his license and registration, and explained the warning ticket." *White*, 81 F.3d at 778. "[T]hose actions," the court explained,

> ended the initial traffic stop. The events beyond that point ... did not constitute a *Terry* stop as White contends. Instead, after White's license and registration were returned and the warning was issued, the encounter became nothing more than a consensual encounter between a private citizen and a law enforcement officer.

*Id.* at 779; *see also United States v. Turner*, 928 F.2d 956, 958 (10th Cir.1991) ("[O]nce the officer has returned the driver's license and registration in a routine traffic stop, questioning about drugs and weapons or a request for voluntary consent to search may be 'an ordinary consensual encounter between a private citizen and a law enforcement official.' ").[5]

## III

The opinion in this case, then, creates from whole cloth a constitutional rule that is neither required nor even supported by Supreme Court precedent, and indeed, a rule that conflicts with precedent from at least two other circuits. In a misguided quest to "protect" motorists from wholly consensual encounters, it breathes into be-

---

4. *See, e.g. Florida v. Royer*, 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) (explaining that "by returning [a suspect's] [documents], and informing him that he [i]s free to go if he so desire[s], ... officers may ... obviate[ ] any claim that the encounter was anything but a consensual matter from start to finish"). That Officer David did not specifically tell Chavez–Valenzuela that he was free to go does not require a contrary conclusion. *See Ohio v. Robinette*, 519 U.S. 33, 39–40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (eschewing a bright-line rule requiring a detaining officer to inform a citizen validly stopped for a traffic offense that he is free to go before the officer attempts to engage in a consensual interrogation, concluding that "it would be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary").

5. Surprisingly, the opinion in this case cites neither *White* nor *Turner* in arriving at its unprecedented conclusion.

ing a seven-minute rule far removed from the Fourth Amendment touchstone of "reasonableness." This brand of expansion of constitutional rights by unvarnished *ipse dixit* is totally unwarranted. Yet it is not this court, but responsible law enforcement, that will suffer the inevitable consequences. This rule will almost certainly hamper legitimate law enforcement efforts throughout this circuit; far from protecting constitutional rights, the seven-minute rule will instead thwart officers' perfectly lawful attempts to "serve and protect."

I respectfully dissent from our failure to rehear this case en banc.