**UNITED STATES of America,**
**Plaintiff,**

v.

**Deandre BRADLEY, Defendant.**

**No. CR 02–122–RE.**

United States District Court,
D. Oregon.

Aug. 21, 2002.

Michael W. Mosman, United States Attorney, District of Oregon, Scott Kerin, Special Assistant United States Attorney, Portland, OR, for Plaintiff.

Ruben Iniguez, Assistant Federal Public Defender, Portland, OR, for Defendant.

## OPINION AND ORDER

REDDEN, District Judge.

The matter before the court is defendant's motion (doc. 13) to suppress physical evidence and statements. Oral argument was held on July 22, 2002, and the parties thereafter filed supplemental briefs. For the reasons discussed below, the motion is granted.

### *Factual Background*

On March 26, 2002, defendant was indicted on one count of possession with intent to distribute a Schedule II controlled substance; one count of possession with intent to distribute cocaine base while knowingly possessing a firearm; and one count of being a felon in possession of a firearm. He now moves for suppression of all physical evidence and statements made by him.

On October 18, 2001, at approximately 8:10 p.m., Officer Peter Simpson was on patrol in the area of N.E. Martin Luther King Boulevard and Columbia Boulevard. He observed a green 1993 Pontiac Bonneville pulling out of a parking lot, heading toward Martin Luther King Boulevard. It was dark, but the area was lit by streetlights and lights on buildings bordering the street. Officer Simpson noticed the windows of the car were very dark, and that he could not tell who was driving. He testified that based on his training and experience, he believed the windows were too dark and illegally tinted. After determining from a Department of Motor Vehicles check that the registered owner of the car, defendant Bradley, was "misdemeanor revoked," Officer Simpson initiated a traffic stop, based on the tinted windows.

After stopping the car, Officer Simpson recognized the driver as Mr. Bradley, the defendant. Defendant told Officer Simpson that he did not have his license back, but he showed Officer Simpson paperwork that allowed him to apply for a driver's license. Officer Simpson asked if defendant had insurance, and he responded that he did not. Officer Simpson then returned to his patrol car to conduct a records check on defendant and his passenger, Fred Allen, and to order a tow of the car. While he awaited the records check, he completed a traffic citation for two violations: obscured windows in violation of Or.Rev.Stat. § 815.220, and driving uninsured in violation of Or.Rev.Stat. § 806.010.

When he returned to the car, Officer Simpson asked defendant to step outside of it so he could issue him the citation. Defendant exited the car and Officer Simpson gave him the citation. Officer Simpson explained that the car was going to be towed, pursuant to City policy. Officer Simpson testified that he could not recall if he told defendant he was going to conduct an inventory search after he told him the vehicle would be towed. However, defendant testified that Officer Simpson told him the car would be searched before being towed. Further, defendant testified that from past experience, he knew that cars are searched before they are towed and that, although he could have said no, that would not have stopped the search of a car that was going to be towed. Officer Hendrie also testified that he had arrested defendant in the past and that at least some of those arrests resulted in defendant's car being towed.

Officer Simpson then asked whether defendant had any drugs or weapons on his person or if he had anything illegal in the car and if he could look, which the government characterizes as routine questions. Defendant said he had nothing on his person, consented to a search of his person, and told Officer Simpson to "go ahead" and look in the car. The government characterizes this encounter as short, lowkey, and conversational.

Officer Simpson began the inventory of defendant's car inside the passenger compartment. Defendant and his passenger remained standing nearby, outside the car, for the duration of the search. Officer Simpson found $250 cash and a small white box in the jockey box (the console between the driver and front passenger seats). He opened the white box and found two diamond-like earrings inside. He also found a cellular phone inside the car.

When Officer Simpson tried to open the glove box, he found that it was locked. He testified that the lock appeared to be broken, but defendant denies that it was broken. Officer Simpson retrieved a key from defendant's key ring that appeared to fit the lock, but when he inserted the key, the lock did not turn. He asked defendant how to get into the trunk and glove box in order to inventory the contents. Officer Simpson testified that defendant told him that he had lost the key, but that there was a button on the driver's door that opened both the trunk and glove box. On the other hand, defendant testified that he did not tell Officer Simpson the button would open the glove box, but only the trunk. When Officer Simpson pressed the button, the trunk opened but the glove box did not. On the button was an icon of a car with its trunk open.

Officer Simpson again asked defendant how he wanted him to open the glove box because he needed to inventory the contents. Defendant again stated he had lost the key, and suggested a locksmith. Officer Simpson told defendant the glove box was already broken, but defendant disagreed. In response, Officer Simpson asked defendant to let him try something else. Officer Simpson says defendant replied "O.K.", but defendant testified that he did not have time to respond before Officer Simpson began inserting an object under the cover of the glove box.

Officer Simpson inserted the blade of a small pocket knife into the lock located on the left side of the glove box, but he could not get the lock to turn. At this point, he testified that noticed the glove box was not sealed tightly on the right side and he was able to pull open the glove box just enough to shine some light inside. Through the small opening, he observed what appeared to him to be a black 9mm handgun.

Officer Simpson arrested defendant, handcuffed him, and read him his *Miranda* rights. He told him that he had found a gun in the glove box, and that defendant had two options: either Officer Simpson could write a search warrant to retrieve the gun, or he could just pull open the glove box and retrieve the gun. Officer Simpson says that, in response, defendant told him to go ahead and open it. Defendant testified that he told Officer Simpson to get a warrant.

Officer Simpson put defendant inside his patrol car and returned to the Pontiac with another officer. He pulled on the cover of the glove box again and asked Officer Hendrie if he could see a gun. Officer Hendrie responded that he could see a gun and it appeared that four to five ounces of crack cocaine were also in the glove box. Officer Simpson pulled harder on the glove box and it popped open. From inside the glove box, he seized a 9mm pistol and a baggy containing approximately 124 grams of a substance later identified as cocaine base.

Later that night Officers Simpson and Hendrie interviewed defendant at the Northeast Precinct. Defendant told the officers he bought the gun on the street one to one and a half months earlier. He explained that the cocaine was not his, and that he was just delivering it for someone. He gave the officers the address where he obtained the cocaine, and told them it cost $2,400 and he was going to take the money

to the seller later after delivering the cocaine. Defendant also gave Officer Simpson the key to the glove box, which he said had been hidden in his underwear.

## Motion to Suppress

### A. Probable Cause to Stop for Tinted Windows. .

Defendant argues that Officer Simpson lacked sufficient probable cause to stop defendant for his tinted windows. It is legal for windows to be tinted in Oregon, subject to light transmittance standards set forth in the statute (Or.Rev.Stat. § 815.221(2)), and in this case it was ultimately determined that defendant's window tinting complied with the law. Defendant argues that because the tinting complied with the law, his windows were not obstructed and he did not commit a traffic violation. Defendant argues that even if Officer Simpson was mistaken in believing that defendant's windows were unlawfully obstructed, that belief was not founded on any objective basis and was therefore unreasonable.

 The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Based on the evidence before the court, I conclude that Officer Simpson had probable cause to believe that the tinting on the windows constituted a traffic violation. He had both experience and training regarding what is a permissible level of window tint and, based on that experience and training, he had both a subjective and objective basis to believe that defendant's windows were illegal. It was reasonable for Officer Simpson to stop defendant based on his suspicion that the car windows were tinted too darkly to comply with Oregon law, even if that turned out not to be the case.

### B. Validity of Consent.

Defendant argues that any "consent" to forcibly open the glove box that Officer Simpson allegedly obtained from him was invalid because it was obtained only after Officer Simpson told him that his car would be searched in any event. As such, defendant's "consent" was actually just his acquiescence to Officer Simpson's claim of lawful authority to search.

 I agree that defendant's alleged consent does not justify the forced opening of the glove box. The Ninth Circuit has said that "[i]t is well established that there can be no effective consent to a search and seizure if that consent follows a law enforcement officer's assertion of an independent right to engage in such conduct." *Orhorhaghe v. Immigration and Naturalization Service*, 38 F.3d 488, 500 (9th Cir. 1994). This is precisely what happened in this case.

The facts show that when Officer Simpson issued to defendant the citation for driving uninsured, he told him that the car would be towed and that he either told defendant, or defendant knew from prior experience, that he was required to conduct an inventory search of the vehicle. Defendant then consented to a search of his person, and told Officer Simpson to "go ahead" and look in the vehicle. This consent did not turn the subsequent search, including the forcible opening of the glove box, into a consent search because defendant was already aware that Officer Simpson had a right and duty to search the vehicle. This alleged consent was also not broad enough to cover the forcible opening of the glove box, given the totality of the circumstances and interactions regarding the glove box.

Thereafter, Officer Simpson made various failed attempts to open the glove box. Officer Simpson then asked defendant how he wanted him to open the glove box be-

cause he needed to inventory the contents. Defendant suggested a locksmith because he did not want the glove box to be damaged. Officer Simpson told defendant the glove box was already broken, but defendant disagreed. In response, Officer Simpson asked defendant to let him try something else, to which defendant may have replied "O.K." or may not have responded at all (a disputed point). Officer Simpson then proceeded to forcibly pry the lid of the glove box up, which allowed him to see a gun inside. He told defendant that he had found a gun in the glove box, and that defendant had two options: either Officer Simpson could write a search warrant to retrieve the gun, or he could just pull open the glove box and retrieve the gun. Officer Simpson says defendant told him to just open it, and defendant testified he told Officer Simpson to get a warrant.

Given the totality of these circumstances, these exchanges also do not constitute valid consents to forcibly open the glove box. As discussed above, defendant asserts that he had already been told the vehicle search was both permissible and required and, based on prior experience, he knew this to be true. Further, Officer Simpson's request to "try something else" was not specific enough to constitute a valid request for consent to force the glove box open, even if defendant did respond "O.K." And finally, even assuming that defendant told Officer Simpson to open the glove box in response to the two options that Officer Simpson gave to him (a disputed point), the two options presented to defendant conveyed that Officer Simpson already had a legally valid basis for a search warrant to force open the glove box so that consent, whether given or not, was essentially irrelevant.

█ Because defendant's consent cannot be relied upon to justify the forcible opening of the glove box, the evidence must be suppressed unless the search of the glove box can be justified on another ground.

## C. *Constitutionality of Forced Opening of Glove Box.*

Defendant argues that Officer Simpson violated the Fourth Amendment when he forcibly pried open the locked glove box because such an action violated the Portland City Code's inventory search policy. The inventory search policy permits an "inventory of personal property and the contents of open containers" in "locked compartments including, but not limited to, locked vehicle trunks, locked hatchbacks, locked car-top containers," only if the keys are available or "an unlocking mechanism for such compartment is available within the vehicle." Portland City Code § 14.10.020(C). The provision goes on to state that "[u]nless otherwise provided in this chapter, closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes." *Id.* A closed container "means a containers whose contents are not exposed to view." *Id.*

█ I agree that Officer Simpson violated the Portland City Code's inventory search policy when he forced open the glove box. The inventory search exception to the Fourth Amendment's warrant requirement is available if (a) the state or local police departments have standardized inventory search procedures, and (b) the inventory is carried out in accordance with the standardized procedures. *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *South Dakota v. Opperman,* 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Johnson,* 936 F.2d 1082, 1084 (9th Cir. 1991). An inventory search must not be a ruse for a general investigatory search to discover incriminating evidence. *Wells,*

495 U.S. at 4, 110 S.Ct. 1632; *United States v. Bowhay*, 992 F.2d at 231. An inventory search is illegal, and any discovered evidence must be suppressed, when the search does not comply with the inventory search procedures. *United States v. Wanless*, 882 F.2d 1459, 1464 (9th Cir. 1989); *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

▆▆▆ In this case, neither a key or an unlocking mechanism was available. Defendant twice told Officer Simpson that he had lost the key to the glove box. Further, irrespective of what defendant may or may not have told Officer Simpson about the unlocking button in the car, it is clear from the photograph of the unlocking button bearing the icon of a car with its trunk open (Exhibit D to Defendant's Reply) that it was a trunk release button that did not operate the glove box. Aside from being clear from the icon, when Officer Simpson pressed the button, the glove box did not open, but the trunk did. The inventory search policy permits an "inventory of personal property" in "locked compartments" *only* if the keys are available or "an unlocking mechanism for such compartment is available within the vehicle." Portland City Code § 14.10.020(C). In this case, no working key was available and no unlocking mechanism for the glove box was available inside defendant's vehicle. Officer Simpson's forcible opening the glove box violated the inventory policy. Because only one prong of the two-prong *Wells* test was satisfied on these facts (*i.e.*, there existed a standardized inventory search policy), Officer Simpson's actions did not come within the protection of the inventory search exception to the Fourth Amendment.

I need not resolve the issue of whether an individual can consent to a police officer exceeding the constitutional parameters of an inventory search because, on these facts, I have concluded that defendant never gave valid consent for Officer Simpson to forcibly open the glove box.

**D.** ***Continuation of Detention and Questioning.***

Because I have concluded that defendant's consent was not effective, and that the forcible opening of the glove box cannot be constitutionally justified as a proper inventory search, I need not address defendant's arguments that the alleged continued detention and questioning of defendant violated the rule of *United States v. Chavez–Valenzuela*, 268 F.3d 719 (9th Cir. 2001), *opinion amended by* 279 F.3d 1062 (9th Cir.2002), *rehearing en banc denied*, 281 F.3d 897 (9th Cir.2002).

**E.** ***Admissibility of Defendant's Statements.***

▆▆▆ Defendant made statements about the drugs and the firearm at the Northeast Precinct after his arrest. These statements are not admissible because they constitute evidence obtained subsequent to an illegal search. Evidence deriving from an illegal investigation is generally considered tainted by the illegality and thus inadmissible, notwithstanding the suspect's consent, unless subsequent events have purged the taint. *Wong Sun v. United States*, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Morales*, 972 F.2d 1007, 1010 (9th Cir.1992). Because I have concluded that defendant's consent cannot be relied upon to justify the forced opening of the glove box, and that the forced opening violated the Portland City Code's inventory search policy, defendant's motion to suppress the statements is granted.

### Conclusion

For the reasons discussed above, defendant's motion (doc. 13) to suppress physi-

cal evidence and statements is GRANTED.

IT IS SO ORDERED.