# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1938

_____

United States of America,

       Appellee,

v.

Salvador Flores,

       Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska.
\*
\*
\*

_____

Submitted: October 16, 2006
Filed: January 25, 2007

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Salvador Flores appeals from his conviction for possession with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). We affirm.

## I.

On January 9, 2005, Nebraska Deputy Sheriff Bill Maddux was on routine patrol, traveling east on Interstate 80 in Seward County, Nebraska, when he came upon a vehicle driven by Flores, also traveling east. Maddux followed Flores for a

short distance and observed Flores's vehicle twice cross the center line. Maddux thereafter conducted a traffic stop because of Flores's failure to maintain a single lane of travel and driving left of center and to determine whether Flores was impaired.

Maddux activated his video camera and audio recorder, exited the patrol car, and approached Flores's vehicle. As he approached, Maddux noticed two air fresheners in the back window deck of the vehicle and a Febreze deodorizer bottle on the rear floorboard. Maddux then had a conversation with Flores, the lone occupant of the vehicle, explained the reason for the stop, and asked him for his proof of insurance, vehicle registration, and driver's license. During this conversation, Maddux detected a strong air-freshener fragrance emanating from the vehicle and observed an additional air freshener hanging from the steering column and three cellular telephones in the front seat, one mounted on the dashboard, one plugged into a charger, and one lying on the front seat. Maddux found the presence of multiple air fresheners and cellular telephones to be significant because, based on his training and experience, he knew that people transporting large amounts of narcotics commonly use numerous deodorizers to eliminate the smell of such narcotics and commonly carry their own phone, plus phones given to them from the individuals for whom the narcotics are being transported so they can stay in contact during the trip.

Once Flores retrieved the requested documents, Maddux had him exit the vehicle and take a seat in the front passenger side of his patrol car. Inside the patrol car, Maddux reviewed Flores's documents and had the dispatcher run Flores's information through the computer. During this process, Maddux asked Flores where he was headed, to which Flores replied that he had been in Colorado for a couple of weeks visiting family and was now returning home to Illinois. Maddux also learned that Flores was married and, when Maddux asked him where he worked, Flores hesitated and then showed Maddux the logo on the pocket of his jacket. Maddux found it strange that Flores would go on what appeared to be a family vacation while his family remained in Illinois. Maddux also thought it suspicious that Flores

-2-

hesitated upon being asked where he worked and that he found it necessary to use his jacket as a means of identifying his employer.

The dispatcher eventually informed Maddux that everything was in order with Flores's driver's license and vehicle registration. Maddux subsequently issued Flores a written warning for driving left of center, explained it to him, returned all of Flores's documents, and told him that he was free to go. As Flores was preparing to leave the patrol car, Maddux asked if he could ask him a few questions. Flores replied, "Yeah, sure," and remained standing next to the passenger side door of the patrol unit. From inside the patrol unit, Maddux asked Flores if he had any marijuana, cocaine, or weapons in the vehicle, to which Flores responded that he did not. Maddux then asked Flores if he could search his car, to which Flores replied, "Yeah." The entire encounter between Flores and Maddux was recorded on video tape and conducted in English.

Maddux had Flores take a seat in the patrol unit and then proceeded to conduct a search of Flores's vehicle. Maddux discovered that the spare tire in the trunk had no air in it and was not beaded onto the rim. As he lifted the tire from the trunk Maddux, who had worked at a service station changing tires while in college, noticed that it was heavier than it should have been. He heard and felt objects within the tire as he rolled it around on the roadway. Maddux cut open the tire and found nine packages of methamphetamine located within. Flores was subsequently arrested and charged with possession with the intent to distribute more than 500 grams of methamphetamine.

Prior to trial, Flores moved to suppress the evidence found during the search of his vehicle, arguing that he was unreasonably detained by Maddux and that his

consent to search was not voluntarily given. The district court,[1] relying on the report and recommendation issued by the magistrate judge,[2] held that Flores was not unreasonably detained because the encounter between Flores and Maddux that continued after Flores had exited the vehicle was consensual, that the continued contact was supported by reasonable suspicion, and that Flores voluntarily consented to the search of his vehicle. A jury subsequently found Flores guilty, whereupon the district court imposed a sentence of 235 months' imprisonment, five years of supervised release, and a $100 special assessment.

## II.

Flores contends that the district court erred when it denied his motion to suppress the evidence found during the search of his vehicle. We review a district court's factual determinations supporting a denial of a motion to suppress for clear error and its conclusions of law *de novo*. United States v. Velazquez-Rivera, 366 F.3d 661, 664 (8th Cir. 2004). "We review the lower court's determination of whether a voluntary consent to a search was given under the clearly erroneous standard." United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993).

Flores acknowledges that he was lawfully stopped and that Maddux's initial investigation was permissible. It is Maddux's questioning of Flores after this initial investigation and after he had returned Flores's documents that Flores raises as an issue. He contends that this questioning was not consensual and therefore constituted a seizure under the Fourth Amendment that was not supported by a reasonable suspicion. We disagree.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]The Honorable F.A. Gossett, United States Magistrate Judge for the District of Nebraska.

An officer may conduct an investigation reasonably related to the scope of a lawful stop.  United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001).  Once this initial investigation is finished, however, the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable, "'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention'" or unless the continued encounter is consensual.  Id. at 925 (quoting United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995)).  If consensual, the continued encounter is not considered a seizure, the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle.  Id.

The determination whether an encounter is consensual depends upon the unique factual nature of each case.  Jones, 269 F.3d at 925.  "A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area . . . ."  United States v. White, 81 F.3d 775, 779 (8th Cir. 1996).  Rather, a person is considered to be seized when, considering all the circumstances, "'a reasonable person would have believed that he was not free to leave.'"  Jones, 269 F.3d at 925 (quoting United States v. Mendenhall, 446 U.S. 544, 545 (1980)).  Circumstances supportive of a finding that a seizure occurred include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"  White, 81 F.3d at 779 (quoting United States v. Angell, 11 F.3d 806, 809 (8th Cir. 1993)).  If, however, "a reasonable person would feel free 'to disregard the police and go about his business,'" we consider the encounter consensual.  Id. (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)).

The facts present here support a determination that Flores was no longer seized within the meaning of the Fourth Amendment after Maddux returned his documents to him and issued the warning ticket.  Similar to the circumstances found in White, a

case in which we determined the encounter to be consensual, the tone of the entire exchange between Maddux and Flores was cooperative, Flores had everything he needed to proceed with his journey, and Maddux displayed no weapon during the encounter. See id. at 779. The fact that Flores was informed that he was free to leave and was in the process of leaving the patrol car before Maddux inquired whether he could ask more questions further supports a finding that the continued encounter was consensual, as does the fact that Maddux was the only officer present at the scene and remained seated in the patrol car while making this inquiry. See Jones, 269 F.3d at 926; White, 81 F.3d at 779. In light of these circumstances, we agree with the district court's finding that the encounter was consensual and that Fourth Amendment considerations are thus not relevant. Accordingly, we need not address whether Maddux had reasonable suspicion for such encounter.

Flores further contends that his consent to search his vehicle was not voluntarily given and that the evidence obtained during this search should therefore be suppressed. We disagree.

"Consent is voluntary if it was 'the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied.'" United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000) (quoting United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990)). In determining whether consent was voluntary, we look at the totality of the circumstances, "including 'both the characteristics of the accused and the details of the interrogation.'" Id. (quoting Chaidez, 906 F.2d at 380-81). Characteristics of persons giving consent that may be relevant include:

> (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their Miranda rights; and (5) whether, because

they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

Id. (citing Chaidez, 906 F.2d at 381). Relevant characteristics of the environment in which consent was given include:

> whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

Id. (citing Chaidez, 906 F.2d at 381). These factors are not to be applied mechanically, but serve as a valuable guide to our analysis. Chaidez, 906 F.2d at 381.

In light of the totality of the circumstances, we find no clear error in the district court's finding that Flores's consent was voluntarily given. Flores is an adult who consented to the search after only brief questioning. Maddux did not threaten him, intimidate him, or cause him to rely on any promises or misrepresentations, and Flores voiced no objection to Maddux's search of the vehicle. There was no evidence that Flores was intoxicated or under the influence of drugs, and the roadside encounter was not unduly coercive. See id. at 382 (holding that sitting in a patrol car on the shoulder of a public highway during daylight hours is not an unduly coercive setting).

The fact that the communication between Maddux and Flores took place in English, rather than in Spanish – Flores's primary language – does not suggest a finding of involuntariness. Flores promptly retrieved his documents in response to Maddux's request and consistently answered Maddux's questions in English, giving

Maddux no indication that Flores did not understand the conversation. As a result, it was reasonable for Maddux to believe that Flores had consented to the search.

The fact that Flores was never informed of his right to withhold consent and that there is no evidence that he had previously been arrested or was otherwise familiar with protections afforded to him are not determinative of the issue. Chaidez, 906 F.2d at 381.

## III.

Flores contends that the evidence was insufficient to convict him of possessing with the intent to distribute more than 500 grams of methamphetamine. We review a challenge to the sufficiency of the evidence *de novo* and "'view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that supports the jury's verdict.'" United States v. Chapman, 356 F.3d 843, 847 (8th Cir. 2004) (quoting United States v. Abfalter, 340 F.3d 646, 654-55 (8th Cir. 2003)). We will reverse only if "'no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt.'" United States v. Exson, 328 F.3d 456, 460 (8th Cir. 2003) (quoting United States v. Carter, 270 F.3d 731, 734 (8th Cir. 2001)).

The evidence presented to the jury shows, among other things, that Maddux found more than 3,500 grams of 90 to 95% pure methamphetamine in the spare tire of Flores's vehicle, that Flores had three cellular telephones within the vehicle, and that Flores's vehicle contained multiple air fresheners and smelled strongly of such fragrance.

Flores's dominion over the vehicle alone could support a finding that he knowingly possessed the methamphetamine, see United States v. Flores, 362 F.3d 1030, 1036 (8th Cir. 2004), as could the presence of multiple cellular telephones and air fresheners in light of Maddux's testimony regarding the use of cellular telephones and air fresheners by drug transporters. Further, the possession of such a large quantity of high-level purity methamphetamine supports a finding that Flores had the intent to distribute the methamphetamine. See United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th cir. 2004) ("A large quantity of drugs, standing alone, is sufficient evidence of . . . intent to distribute."); United States v. Brett, 872 F.2d 1365, 1370 (8th Cir. 1989) ("Purity level is another factor properly considered with respect to intent to distribute."). Considering this evidence as a whole, and the favorable light in which it must be viewed, we cannot say that it was unreasonable for the jury to find Flores guilty.

The judgement is affirmed.

_____